## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Unites States of America

    v.                               Criminal No. 17-cr-009-LM
                                         Opinion No. 2018 DNH 199

Steven Tucker

### O R D E R

On September 28, 2017, defendant Steven Tucker pleaded guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) to one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a). Tucker moves to withdraw his guilty plea (doc. no. 51). The government objects. The court held a hearing on Tucker's motion on July 2, 2018. For the reasons that follow, the court denies Tucker's motion.

### BACKGROUND

On January 25, 2017, Tucker was indicted on three counts: (1) Sex Trafficking of a Minor in violation of 18 U.S.C. § 1591 (Count I); (2) Use of Interstate Facility to Promote Unlawful Activity in violation of 18 U.S.C. § 1952 (Count II); and (3) Maintaining Drug-Involved Premises in violation of 21 U.S.C. § 856. The following day, Tucker, who at the time was represented by Jonathan Saxe, a public defender, waived his right to a detention hearing and stipulated to detention.

On January 31, 2017, Attorney Saxe moved to withdraw from the case, and the court granted the motion on the following day. On February 3, 2017, the court appointed Attorney Justin Shepherd to represent Tucker. On August 29, 2017, the court appointed Attorney Paul Garrity as Tucker's co-counsel.

After several continuances, trial was scheduled for October 10, 2017. On September 28, 2017, Tucker and his two attorneys signed a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). In exchange for Tucker's agreement to plead guilty to Count One of the Indictment, which charged Tucker with sex trafficking of a minor, the government agreed to dismiss Counts Two and Three and to a stipulated sentence of 120 months' imprisonment.

That same day, the court held a change of plea hearing. Tucker, represented by both Attorneys Shepherd and Garrity, stated during the plea colloquy that he had met with his attorneys several times to discuss the plea agreement, that he was satisfied with his attorneys' representation, that he understood the consequences of his plea, and that he was entering the plea because he was guilty of the charged offense. The court accepted Tucker's plea of guilty as to Count One and scheduled sentencing for January 5, 2018.

On November 7, 2017, Tucker filed a pro se motion requesting that both of his attorneys be relieved.  See doc. no. 37.  On November 14, 2017, the court held an ex parte hearing, during which Tucker clarified that he was dissatisfied with the representation of Attorney Shepherd only, not Attorney Garrity. After the hearing, the court issued an order granting "Tucker's requests (a) to permit Attorney Shepherd to withdraw and (b) to appoint Attorney Garrity as lead counsel."  November 14, 2017 endorsed order.

Attorney Garrity subsequently filed two assented-to motions to continue Tucker's sentencing hearing, both of which the court granted.  Sentencing was ultimately scheduled for March 16, 2018.

On March 14, 2018, Attorney Garrity filed another assented-to motion to continue the sentencing hearing.  See doc. no. 46. In that motion, Attorney Garrity represented that Tucker "informed the undersigned counsel on March 14, 2018 that he wishes to pursue withdrawal of his guilty plea."  Id. at 1.  The court denied the motion in an endorsed order, stating that it would consider the request at the March 16 hearing.

At that hearing, Tucker represented that he believed that his former counsel, Attorney Shepherd, may not have provided him with all the relevant discovery in the case prior to Tucker pleading guilty.  The court granted Tucker an extension of time

to investigate the issue and to decide whether he wished to move to withdraw his guilty plea.

On June 4, 2018, Attorney Garrity filed the instant motion on Tucker's behalf to withdraw Tucker's guilty plea.  See doc. no. 51.  The government objects.

### DISCUSSION

A defendant may withdraw a guilty plea before the court imposes a sentence if he shows "a fair and just reason for requesting the withdrawal." United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006); see Fed. R. Crim. P. 11(d)(2)(B).  In determining whether the defendant has shown a sufficient reason for requesting a withdrawal of his plea, the court considers "whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11; the strength of the reasons offered in support of the motion; whether there is a serious claim of actual innocence; the timing of the motion; and any prejudice to the government if the withdrawal is allowed." United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009) (citing United States v. Padilla-Galarza, 351 F.3d 594, 597 (1st Cir. 2003)).  The "defendant bears the burden of demonstrating a 'fair and just reason' for seeking to withdraw his plea." United States v. Moore, 362 F.3d 129, 134 (1st Cir. 2004).  The court will address each of the five Rule 11 factors in turn.

I.    Voluntary, Intelligent, and Knowing Plea

The first factor—whether a plea is voluntary, intelligent, and knowing—is the most significant factor to consider in a Rule 11(d) analysis. Isom, 580 F.3d at 52; United States v. Negrom-Narvaez, 403 F.3d 33, 36 (1st Cir. 2005). For a plea to be voluntary, intelligent, and knowing, the plea colloquy must comply with Rule 11(b)(1) and the defendant must be competent to enter the plea. United States v. Santiago Miranda, 654 F.3d 130, 132–34 (1st Cir. 2011); United States v. Ramos, 810 F.2d 308, 312 (1st Cir. 1987). The court must also "assess whether the defendant's plea was 'free from coercion, . . . and whether he understood the charges, and . . . consequences of the guilty plea.'" United States v. McMullin, 568 F.3d 1, 9 (1st Cir. 2009) (quoting United States v. Pagan-Ortega, 372 F.3d 22, 28 (1st Cir. 2004) (alterations omitted)). Further, a defendant may show that his guilty plea was not voluntary, intelligent, and knowing by demonstrating that it was the product of his attorney's ineffective assistance. See United States v. Fernandez-Santos, 856 F.3d 10, 17 (1st Cir. 2017); United States v. Dunfee, 821 F.3d 120, 128 (1st Cir. 2016).

A defendant's ineffective assistance claim in the context of a motion to withdraw a guilty plea is analyzed under the familiar standard articulated in Strickland v. Washington, 466 U.S. 668 (1984). See, e.g., United States v. Pellerito, 878

F.2d 1535, 1537 (1st Cir. 1989).  The court must determine (1) whether counsel's performance fell below the standard of performance of reasonably proficient counsel and (2) whether, by such inadequate performance, the defendant was induced to enter a guilty plea which he otherwise would not have entered. United States v. Austin, 948 F.2d 783, 786 (1st Cir. 1991).

Tucker does not take issue with the Rule 11 colloquy at the September 28, 2017 change of plea hearing.  As Tucker and Attorney Garrity agreed at the hearing on the instant motion, the Rule 11 colloquy established that: Tucker was entering the plea voluntarily; he understood the charges and factual allegations against him; he was guilty of sex trafficking of a minor; and he understood the consequences of pleading guilty. Attorney Garrity also confirmed that he met with Tucker at least six times at the prison prior to Tucker entering the plea, and that he had a lengthy meeting with Tucker in the hours before the change of plea hearing.

Instead, Tucker claims that his plea was not voluntary, intelligent, and knowing because it was the product of Attorney Shepherd's ineffective assistance.  Specifically, he argues that Attorney Shepherd was ineffective for 1) failing to obtain and/or provide him with all of the discovery to which he was entitled, and 2) failing to determine that the government was

precluded from bringing federal charges against him in light of
his guilty plea to other charges in New Hampshire state court.

A.    Tucker's Lack of Access to Discovery

Viewed generously to Tucker, his motion raises two claims
of ineffective assistance of counsel with regard to discovery.
The first is that Attorney Shepherd provided ineffective
assistance in failing to obtain all discoverable material from
the government prior to Tucker entering his guilty plea.  The
second is that Attorney Shepherd failed to provide Tucker with
all the discovery in Attorney Shepherd's possession.  The court
examines each claim in turn.

1.    Government's production of discovery

In its objection to Tucker's motion, the government
provides a lengthy discussion of the history of its discovery
production in this case.  Attorney Garrity does not dispute the
government's representations, which the court summarizes below.

The government made several document productions to Tucker
and his various attorneys.  Specifically, the government
produced discovery material to Attorney Saxe on January 30,
2017; to Attorney Shepherd on March 30, June 26, and September
25, 2017; and to Attorney Garrity on September 12 and September
25, 2017.  Included in these productions were approximately

2,000 pages of documents and 21 discs containing recordings of jail calls.

On May 11, 2018, in response to Tucker's motion to withdraw his guilty plea and his concerns about the discovery, the government reproduced to Attorney Garrity all of the material it had previously produced in the case.  In addition, the May 11 production contained 100 additional pages of documents generated or gathered during trial preparation, 30 of which were letters that Tucker himself had written.  Of the 70 pages Tucker and Attorney Garrity had not yet seen, most of it was Jencks Act[1] material that was favorable to the government's case, or material that was not discoverable under Federal Rule of Criminal Procedure 16 and which was not helpful to Tucker's case, but which the government produced out of an abundance of caution.

On May 23, 2018, Tucker and Attorney Garrity reviewed the May 11 production in a secure private room in the United States Attorney's Office in the District of New Hampshire.  The government provided Attorney Garrity and Tucker with a master index, which listed every document in the production, gave them unlimited time to review all discovery, and made Assistant U.S.

---

[1] 18 U.S.C. § 3500.

Attorney Huftalen and Attorney Rao, the government's attorneys, available to answer any questions.

During the meeting, Tucker and Attorney Garrity raised two issues with respect to the discovery. The first involved what looked to be a partially-redacted police report, which contained only the first five pages of what appeared to be a nine-page report. The government subsequently concluded, and Tucker and Attorney Garrity agreed, that a complete copy of the police report was included in the May 11, 2018 production. The government had previously produced the report to Attorney Shepherd on May 30, 2017, and to Attorney Garrity on September 12, 2017.

The second issue involved an interview with a confidential source, referred to as "CS9." Tucker asserted that he believed there was a video recording of the interview which the government had not produced in discovery. The government informed Attorney Garrity that it did possess a video-recorded interview of CS9, which had not been produced because it did not constitute Brady material.[2] The government represented that the video constituted Jencks Act material, but that it had not been produced, in part because Tucker had agreed to plead guilty and the government was therefore not required to produce it at that

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

time.  In addition, the government stated that it did not produce the video recording because it identified, by name and face, the witness interviewed and other victims and witnesses whose identities the government had not yet made known to Tucker.  Although the government had not produced the video recording itself, it had produced a report—each time it produced discovery—that accurately summarized the full video interview. Nevertheless, to alleviate Tucker's apparent concerns that the government was withholding certain information, the government arranged for Attorney Garrity to view the full video-recorded interview, which Attorney Garrity did.  At the hearing, Attorney Garrity represented that the video did not contain information helpful to the defense.

In light of the foregoing, Tucker has failed to show that Attorney Shepherd provided ineffective assistance in connection with obtaining the relevant discovery.  It is plainly apparent, and Tucker and Attorney Garrity do not meaningfully dispute, that the government complied with its discovery obligations in this case prior to Tucker entering into the plea agreement. Therefore, to the extent Tucker bases his ineffective assistance claim on Attorney Shepherd's alleged failure to obtain relevant discovery from the government, that argument is not persuasive.

2. <u>Tucker's access to discovery</u>

Tucker claims that Attorney Shepherd provided ineffective assistance because he did not give Tucker access to all the discovery the government produced.  At the hearing on the instant motion, Tucker stated that because the discovery in this case is subject to a protective order, <u>see</u> doc. no. 15, he was unable to retain any material in prison.  Rather, he was limited to viewing discovery during brief visits with his attorneys. Tucker asserts that Attorney Shepherd visited him only a handful of times, each lasting approximately 20 minutes, and that Tucker was therefore unable to review much of the discovery the government produced.

Tucker has not met the standard for ineffective assistance of counsel with respect to his claim concerning his access to discovery.  Even assuming Attorney Shepherd's actions in allegedly not allowing Tucker to view all of the material produced by the government fell below the standard of performance of reasonably proficient counsel, Tucker has not shown that Attorney Shepherd's conduct induced Tucker to enter a guilty plea which he otherwise would not have entered.

Prior to entering his guilty plea, Tucker raised the issue that he had not seen firsthand all of the discovery produced by the government.  According to Attorney Garrity, he met with Tucker for an hour before the change of plea hearing and asked

11

him whether he wanted to continue the hearing to have an opportunity to review all the discovery. Tucker responded that he did not. Therefore, Tucker was aware of the issue prior to the change of plea hearing, and voluntarily decided to plead guilty despite believing that he did not review all of the discovery. Cf. Isom, 580 F.3d at 46 (holding that defendant was not entitled to withdraw guilty plea despite his concerns about insufficient time to review discovery materials prior to entering his plea).

In addition, Tucker fails to identify any piece of discovery he had not previously seen that would have affected his decision to enter into his guilty plea. At the hearing on the instant motion, Tucker appeared to suggest that certain additional discovery he has seen since entering his guilty plea would have allowed him to attack the credibility of some of the confidential informants. He was unable, however, to identify any piece of information or specific discovery of which he was previously unaware that would bolster his defense. See id. at 53 (holding that defendant's claims concerning his lack of access to discovery did not entitle him to withdraw his guilty plea when "the newly discovered evidence was not exculpatory").

In addition, Attorney Garrity represented at the hearing that prior to Tucker entering his guilty plea, Attorney Garrity explained to Tucker that there were areas to attack some of the

witnesses' credibility.  Ultimately, however, Attorney Garrity recommended that in light of the evidence against Tucker and the terms offered by the government, Tucker should accept the guilty plea.  At the hearing on the instant motion, Attorney Garrity represented that having re-reviewed every piece of discovery provided by the government, his recommendation to Tucker to enter into the plea agreement would have remained the same.

In the end, as Tucker stated at the hearing, his claim is essentially that he came to realize after entering his plea that he had a better shot at obtaining a not guilty verdict after a trial than he believed when he entered the guilty plea.  That is insufficient to warrant withdrawal of a guilty plea.  See United States v. Muriel, 111 F.3d 975, 981 (1st Cir. 1997) (noting that the First Circuit "has not allowed defendants, absent coercion or mistake, to renege on plea agreements on the basis that they have miscalculated their risks and benefits or have belatedly discovered a new defense"); United States v. Leland, 370 F. Supp. 2d 337, 342 (D. Me. 2005) (holding that a defendant's motion to withdraw a guilty plea "must 'rest on more than the defendant's second thoughts about some fact or point of law, or about the wisdom of his earlier decision.'" (quoting United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994)), aff'd, 196 F. App'x 9 (1st Cir. 2006).  That is particularly the case in light of Attorney Garrity's representation that, having

again reviewed all of the discovery provided by the government, his recommendation to Tucker to enter into his guilty plea would not have changed.

### 3. Investigator's reports

At the hearing, Tucker raised an additional issue with regard to Attorney Shepherd's alleged failure to provide him with material that would have helped him make an informed decision on whether to plead guilty. At Tucker's request, Attorney Shepherd hired a private investigator to interview several witnesses who Tucker believed could be helpful to his case. According to Tucker, the private investigator interviewed only three or four of these individuals. Although Tucker's argument was somewhat unclear at the hearing, he appears to contend that although Attorney Shepherd told Tucker that the private investigator had uncovered no helpful information, he failed to inform Tucker that the private investigator had been unable to interview many of the witnesses.

Attorney Garrity explained at the hearing that according to the private investigator's reports, the investigator had traveled to North Carolina and South Carolina in an effort to interview the witnesses Tucker requested but was unsuccessful in locating several of them. According to Attorney Garrity, the interviews the private investigator conducted, which Attorney

Garrity read after Tucker entered into his guilty plea, were not helpful to Tucker's case.

Tucker's argument as to the private investigator is unclear. Attorney Shepherd hired a private investigator at Tucker's request and the investigator conducted interviews with certain witnesses who Tucker believed had information helpful to the defense. The investigator interviewed three or four of the witnesses, none of whom had information helpful to Tucker, and was unable to locate and interview any other witnesses. Tucker has not shown how Attorney Shepherd's apparent failure to inform him that the private investigator could not locate certain witnesses, as opposed to informing him that the investigator had uncovered no helpful information, amounts to ineffective assistance of counsel. Nor does Tucker represent that had he been aware of that fact, he would not have pleaded guilty.

For these reasons, Tucker has not shown that Attorney Shepherd's discovery-related conduct rises to the level of ineffective assistance of counsel.

B.  <u>Government's Agreement not to Pursue Charges</u>

Tucker also argues that Attorney Shepherd was ineffective for failing to preclude the government from bringing federal charges against him in light of his guilty plea to related charges in state court. Specifically, Tucker asserts that the

U.S. Attorney's Office had agreed not to bring sex trafficking charges against him in exchange for him agreeing to plead guilty to prostitution charges in New Hampshire Superior Court.

Shortly before the hearing on Tucker's motion to withdraw his guilty plea, the government filed an affidavit from former Assistant United States Attorney Nick Abramson. <u>See</u> doc. no. 58. In his affidavit, Attorney Abramson states that he was involved in the investigation into Tucker on federal sex trafficking charges in 2015. He further states:

> On or about April 27, 2016, Assistant County Attorney Michael Zaino informed me of a potential state plea agreement in which the defendant would plead guilty to one count of misdemeanor prostitution, with CS1 as the victim, and two felony heroin possession charges on a separate state drug case that arose from the same transaction as the federal drug investigation. The proposed sentences totaled 24 months minus approximately 259 days of credit, as well as a suspended sentence of 7.5 to 10 years to run consecutively.
>
> I informed ACA Zaino of my opinion that, based on my understanding of the evidence in the state's case, the plea offer seemed reasonable. I further informed ACA Zaino that the USAONH would not continue to investigate Mr. Tucker for violations of federal drug trafficking laws if Mr. Tucker pleaded guilty to state drug charges, because the two investigations involved the same transactions and because I felt that the federal interest had been vindicated by the successful state prosecution.

<u>Id.</u> at ¶¶ 10-11.

Although Attorney Abramson asserts that he informed Attorney Zaino that the U.S. Attorney's Office would not

continue to investigate Tucker for drug charges related to his state court plea, he states that he did not make any such representation as to federal sex trafficking violations. In addition, Attorney Abramson states that he submitted a formal declination authorization memorandum on April 29, 2016 to recommend closing the investigation of Tucker for federal drug charges, but he specifically recommended proceeding with the federal sex trafficking charges.

Although Attorney Abramson's sworn representations show that the government had not agreed to forego bringing federal sex trafficking charges against Tucker in exchange for his state court plea, his affidavit raised an issue as to Count III, the charge of Maintaining Drug-Involved Premises. Specifically, Attorney Abramson's affidavit was unclear as to whether the government made a promise to forego bringing federal drug charges against Tucker in light of his guilty plea to state drug charges. On July 12, 2018, the court ordered the government to "file a memorandum with any supporting documentation concerning: a) whether it made a promise not to bring federal drug charges against defendant and b) if it made a promise, how that promise affects defendant's motion to withdraw his guilty plea in this case." Doc. no. 59 at 1-2.

In response to the court's order, the government filed a memorandum (doc. no. 62), a supplemental affidavit of Attorney

Abramson (doc. no. 62-1), and an affidavit of Attorney Zaino (doc. no. 62-2). In Attorney Abramson's affidavit, he clarified that he did not make, or authorize Attorney Zaino to make, any promise or representation to Tucker or Tucker's attorney that the government would take or refrain from taking any action with respect to federal drug charges in light of Tucker's state court plea. Rather, Attorney Abramson informed Attorney Zaino that in light of Tucker's prior guilty plea in state court to a drug charge arising from a single drug transaction that occurred on July 24, 2014, the U.S. Attorney's Office would decline to bring charges based on that transaction. Although Attorney Abramson made that representation to Attorney Zaino and submitted the declination authorization memorandum to that same effect, he did not authorize Attorney Zaino, or anyone else, to make any representation to Tucker.

In Attorney Zaino's affidavit, he states that he "did not make any representations or promises to Mr. Tucker or his attorney regarding whether the [U.S. Attorney's Office] would take, or refrain from taking, any action with respect to any federal drug charges." Doc. no. 62-2 at ¶ 13. In addition, the government provided an excerpt from Tucker's June 14, 2016 plea colloquy in state court, during which Tucker represented that no one had made any promises to him in exchange for his plea. See doc. no. 62 at 4.

In response to the government's filing, Attorney Garrity submitted a supplemental memorandum on Tucker's behalf.  See doc. no. 64.  In his memorandum, Attorney Garrity represented that he had spoken to Tucker's attorney in the state court proceedings, Joseph Fricano, who confirmed that he and Attorney Zaino had not discussed potential federal drug charges during their plea negotiations.  Attorney Garrity further represented that the government gave him access to emails between Attorneys Abramson and Zaino, and that the emails showed no representations from Attorney Abramson that federal drug charges would be dropped or not pursued as a condition of Tucker's state court plea agreement.  Attorney Garrity added: "For the above stated reasons and after conferring with the defendant on this matter the defendant cannot represent to this Court that he pled guilty in State Court as a result of a promise that he would not be charged in Federal Court with federal drug charges."  Doc. no. 64 at ¶ 3.

In light of the government's and Attorney Garrity's supplemental filings, the court finds that Tucker has not made out an ineffective assistance of counsel claim based on the state court charges.

C.    Summary

For these reasons, the record shows that Tucker's plea was knowing, voluntary, and intelligent.  Therefore, the first Rule 11 factor weighs against granting Tucker's motion to withdraw his guilty plea.

II.  Strength of Reasons/Serious Claim of Actual Innocence

The second Rule 11 factor is the strength of the defendant's reasons for seeking to withdraw his guilty plea, and the third is whether the defendant asserts a serious claim of actual innocence.  Isom, 580 F.3d at 52.  Because the court has already considered and found unpersuasive two of Tucker's three reasons for seeking to withdraw his plea (i.e., issues related to discovery and his claim that the government agreed not to bring charges against him), the court need not further address those two reasons.  As the third reason for Tucker seeking to withdraw his plea is a claim of actual innocence, the court moves directly to an analysis of the third Rule 11 factor: the seriousness of the defendant's claim of actual innocence.

"The First Circuit has said that courts should look more hospitably on a motion to withdraw a guilty plea when the motion is coupled with an assertion of innocence." United States v. Ketchen, No. 1:13-CR-00133-JAW-02, 2016 WL 3676150, at *21 (D. Me. July 6, 2016) (internal quotation marks and citations

omitted), aff'd, 877 F.3d 429 (1st Cir. 2017). "On the other hand, if the defendant does not proclaim his actual innocence, this factor cuts sharply against allowing appellant's motion to withdraw [his] guilty plea." Id. (internal quotation marks and citations omitted). Even where a defendant asserts actual innocence, such an assertion must be "serious," and provide a "straightforward and plausible claim of actual innocence." Padilla-Galarza, 351 F.3d at 598. "A general denial of guilt is not enough; the defendant 'must affirmatively advance an objectively reasonable argument that he is innocent.'" United States v. Small, 626 F. Supp. 2d 130, 133 (D. Me. 2009) (quoting United States v. Cray, 47 F.3d 1203, 1209 (D.C. Cir. 1995)), aff'd, 640 F.3d 425 (1st Cir. 2011).

In a handwritten exhibit attached to his motion to withdraw his guilty plea, Tucker stated: "I, Steven Tucker, having reflected on the matter and after reviewing the discovery that had been prevented [sic] to me as of this date assert that I am innocent of the charge to which I previously plead [sic] in this court." Doc. no. 51-1. At the July 2 hearing on the instant motion, the court sealed the courtroom and allowed Tucker on an ex parte basis an opportunity to present his reasons for seeking to withdraw his guilty plea. Tucker did not at that time articulate a claim of actual innocence.

To the extent Tucker attempts to assert a claim of actual
innocence, his claim is not serious.  The government detailed in
its objection the overwhelming evidence in its possession
against Tucker, including the statements of at least 10
witnesses.  Tucker offered no plausible claim that he is
innocent of the charge to which he pleaded guilty.  At most, he
offered protestations regarding the credibility of certain
witnesses.  He made no argument that supported a finding—or even
a suggestion—that he was innocent of this charge.  Without more,
Tucker's claim of actual innocence is a bare claim, unsupported
by evidence or a theory of innocence.  See Dunfee, 821 F.3d at
131 (noting that a court considering a motion to withdraw a
guilty plea need not credit a "claim of innocence . . . backed
only by conclusory allegations and wishful conjecture as to the
possible existence of exculpatory evidence"); United States v.
Sanchez-Barreto, 93 F.3d 17, 24 (1st Cir. 1996) (affirming
district court's denial of motion to withdraw guilty plea,
noting that a "district court need not credit bare protestations
of legal innocence"); United States v. Isom, 85 F.3d 831, 839
(1st Cir. 1996) ("[I]f defendant's factual contentions create no
legally cognizable defense to the charges, he has not
effectively denied his culpability, and the motion [to withdraw
a guilty plea] can be denied." (internal quotation marks and

citations omitted)).  Both the second and third Rule 11 factors
weigh against granting Tucker's motion.

III. <u>Timing of the Motion</u>

The fourth Rule 11 factor is the timing of the motion.
"The timing of a motion to withdraw a guilty plea is important
. . . because it is 'highly probative of motive.'"  Fernandez-
Santos, 856 F.3d at 18 (quoting United States v. Doyle, 981 F.2d
591, 595 (1st Cir. 1992)).  "'While an immediate change of heart
may well lend considerable force to a plea withdrawal request, a
long interval between the plea and the request often weakens any
claim that the plea was entered in confusion or under false
pretenses.'"  Id. (quoting Doyle, 981 F.2d at 595).

Tucker pleaded guilty on September 28, 2017.  On March 14,
2018, Tucker moved to continue his sentencing, raising for the
first time with the court that he wished to pursue withdrawing
his guilty plea.  Thus, there is a five-and-a-half-month gap
between Tucker's plea and the first formal notice to the court
that he wanted to withdraw his plea.  Such a lengthy delay
between a defendant's plea and his motion to withdraw generally
weighs against granting the motion.  See, e.g., Dunfee, 821 F.3d
at 131 (holding that two-month delay between plea and motion to
withdraw was "extended" and "weighs against permitting
withdrawal").

At the hearing, however, Tucker represented to the court that he had raised his request to withdraw his guilty plea with his attorneys at some point shortly after he entered into his plea agreement, which was part of the reason for his filing his motion for status of counsel on November 7, 2017.  Attorney Garrity did not dispute Tucker's representation.

The court credits Tucker's assertion at the hearing that he attempted to notify the court that he intended to move to withdraw his guilty plea on November 7, 2017.  Thus, for purposes of the fourth Rule 11 factor, the court will consider the November 7, 2017 date, which is 40 days after Tucker entered his guilty plea, as the operative date of Tucker's motion to withdraw.

Even with that favorable inference, however, the timing of Tucker's motion to withdraw his guilty plea does not weigh in his favor.  The First Circuit has held that delays of shorter duration than presented here weighed against granting a defendant's motion to withdraw his guilty plea.  See Ramos, 810 F.2d at 313 (thirteen-day delay); United States v. Keefe, 621 F.2d 17, 20 (1st Cir. 1980) (twenty-day delay).  Thus, the court considers the timing of Tucker's motion a factor that weighs against allowing Tucker to withdraw his guilty plea.

IV.  Prejudice to the Government

     The final Rule 11 factor asks whether there is any
potential prejudice to the government if the court permits the
defendant to withdraw his guilty plea.  In short, significant
prejudice would result from a withdrawal of Tucker's guilty
plea.  Allowing Tucker to withdraw his plea would, according to
the government, force numerous government witnesses, many of
whom have been subjected to physical violence by Tucker and one
of whom is a minor, to "relive and recount a traumatic part of
their lives that they believed was far behind them."  Doc. no.
53 at 24.  Many government witnesses have suffered from opioid
addiction and have attempted, sometimes more than once, to stay
clean.  In addition, almost all witnesses and victims "have
expressed fear of the defendant, shame in discussing personal
details of a dark period in their lives, and immense relief that
the case, and this chapter of their lives, had finally come to a
close."  Id.

     In light of these circumstances, the court finds that the
final Rule 11 factor weighs heavily against allowing Tucker to
withdraw his guilty plea.  See United States v. Santiago-Rivera,
805 F.3d 396, 398 (1st Cir. 2015) ("We also recognize the severe
prejudice that the government would face were Santiago-Rivera
permitted to withdraw his guilty plea, and the burden that his
victims would face were they forced to relive the trauma

inflicted upon them so long after they believed this case had ended."); *see also* Dunfee, 821 F.3d at 131 ("Finally, we find that both the government and Dunfee's victims would have been prejudiced by a withdrawal of his plea, further tipping the scales in favor of affirmance.").

V.   Summary

In sum, all five of the Rule 11 factors weigh against allowing Tucker to withdraw his guilty plea.  This court finds the fifth factor—the prejudice to the government and its witnesses—particularly weighty.  The court therefore denies Tucker's request to withdraw his guilty plea.

**CONCLUSION**

For the foregoing reasons, the defendant's motion to withdraw his guilty plea (doc. no. 51) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 4, 2018

cc:  Paul J. Garrity, Esq.
     Arnold H. Huftalen, Esq.
     Vasantha R. Rao, Esq.
     U.S. Probation
     U.S. Marshal